UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CRAIG A. GRIFFITH, in his capacity
as West Virginia Tax Commissioner;
and THE COUNTY COMMISSION OF HANCOCK
COUNTY, a public corporation of the
State of West Virginia, ELEANOR STRAIGHT,
in her capacity as Clerk of the County
Commission of Hancock County, COUNTY
COMMISSION OF MARSHALL COUNTY, a public
corporation of the State of West Virginia,
JAN PEST, in her capacity as Clerk of the
County Commission of Marshall County,
COUNTY COMMISSION OF KANAWHA COUNTY, a
public corporation of the State of West
Virginia, VERA MCCORMICK, in her capacity
as Clerk of the County Commission of
Kanawha County, COUNTY COMMISSION OF
PUTNAM COUNTY, a public corporation of
the State of West Virginia, BRIAN WOOD,
in his capacity as Clerk of the County
Commission of Putnam County, COUNTY
COMMISSION OF WYOMING COUNTY, a public
corporation of the State of West Virginia,
D. MICHAEL GOODE, in his capacity as
Clerk of the County Commission of Wyoming
County, COUNTY COMMISSION OF SUMMERS COUNTY,
a public corporation of the State of
West Virginia, and MARY BETH MERRITT,
in her capacity as Clerk of the County
Commission of Summers County,
On behalf of themselves and all others
similarly situated,

            Plaintiffs,

v.                            Civil Action No. 2:12-02083

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a federally chartered corporation and
FEDERAL HOME LOAN MORTGAGE CORPORATION,
a federally chartered corporation and
FEDERAL HOUSING FINANCE AGENCY,
as Conservator for the above defendants,

            Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the defendants' motion to dismiss, filed December 20, 2012, and the plaintiffs' motion for partial summary judgment as to defendants' tax liability, filed August 14, 2013.

## I.    Factual and Procedural Background

In this case, one of several similar actions filed throughout the United States, Plaintiffs, Craig A. Griffith in his capacity as West Virginia Tax Commissioner ("Commissioner Griffith") and the County Commissions and County Clerks ("County Plaintiffs") of Hancock, Kanawha, Marshall, Putnam, Summers, and Wyoming Counties in West Virginia, seeking to represent all similarly situated counties across West Virginia, allege that defendants, the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Housing Finance Agency ("FHFA"), have refused to pay excise taxes imposed on recorded real estate transfers under West Virginia law.

Fannie Mae and Freddie Mac are federally chartered private corporations that own or guarantee a substantial portion of the mortgages on single-family homes in the United States.

2

Am. Compl. ¶¶ 36, 39-40.[1]  Fannie Mae was created by the federal government in order to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote mortgage investments throughout the Nation . . . by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing."  12 U.S.C. § 1716 (2012).  Freddie Mac was created for a substantially similar purpose, as well as to compete with Fannie Mae in the secondary market for mortgages. See 12 U.S.C. § 1451 note (2012) (describing Freddie Mac's mission to "increas[e] the liquidity" of the mortgage market and to "promote access to mortgage credit throughout the Nation"). The FHFA is a federal agency that was created on July 30, 2008 to, among other things, act as conservator for, and oversee the operations of, Fannie Mae and Freddie Mac.  See 12 U.S.C. § 4617(b)(2)(B) (2012) (granting the FHFA the power to "operate" Fannie Mae and Freddie Mac and "to conduct all [of their] business").

        "Fannie Mae and Freddie Mac carry out their missions" to increase the funds available for home lending throughout the country "by purchasing mortgages originated by third-party

---

[1] "Am. Compl." refers to the plaintiffs' First Amended Class Action Complaint, (ECF No. 15).

lenders, pooling the mortgages into investment instruments, and selling those mortgage backed securities to raise capital for further purchases." Montgomery County v. Fed. Nat'l Mortg. Ass'n ("Montgomery Cnty. II"), 740 F.3d 914, 918 (4th Cir. 2014). When one of those mortgages becomes delinquent and enters into foreclosure, Fannie Mae or Freddie Mac may acquire title to the property secured by the mortgage and may, in turn, seek to find a buyer for the property. Am. Compl. ¶¶ 38-41. When either Fannie Mae or Freddie Mac obtains or transfers title to a foreclosed property, it records the change in ownership with the government of the county in which the property is located. Am. Compl. ¶ 38. West Virginia imposes an excise tax on the privilege of making and recording such transfers. W. Va. Code § 11-22-1, et seq. This real estate transfer tax requires any person who desires to record a deed or other document transferring real estate to pay a statutorily prescribed amount to both the State and to the county in which the document is filed. Id. § 11-22-2.

In this case, plaintiffs, State and county officials responsible for levying and collecting West Virginia's real estate transfer tax, claim that Fannie Mae and Freddie Mac have repeatedly acquired and transferred title to property in West Virginia but have refused to pay the tax. Am. Compl. ¶¶ 41-43.

In their amended class action complaint, plaintiffs seek a declaration, pursuant to 28 U.S.C. § 2201, that defendants must pay the West Virginia tax, and also seek damages in the amount of the real estate transfer tax that defendants have thus far refused to pay, as well as "interest for failure to pay" past taxes when they were allegedly due.  Plaintiffs claim that they are entitled to money damages under either 28 U.S.C. § 2202 or under a state-law theory of "equitable estoppel/detrimental reliance."

The defendants have moved to dismiss, arguing that they are immune from paying the tax either because they are federal instrumentalities, or because federal law exempts them from paying the tax.  Defs.' Mem. at 5-17 n.10.[2]  Plaintiffs maintain that the defendants are not exempt, and have moved for partial summary judgment on the issue of defendants' tax liability.  <u>See generally</u> Pls.' Sum. J. Mem.[3]  In their motion for summary judgment, the plaintiffs also assert that any statutory exemption claimed by the defendants would be unconstitutional as applied.  <u>Id.</u> at 4-18.  Specifically, they

---

[2] "Defs.' Mem." refers to the defendants' Memorandum of Law in Support of Their Motion to Dismiss the Plaintiffs' First Amended Class Action Complaint, (ECF No. 26).

[3] "Pls.' Sum. J. Mem." refers to Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment on the Issue of Liability, (ECF No. 44).

claim that Congress does not have the power to exempt a private corporation such as Fannie Mae or Freddie Mac from state or local taxation.  <u>Id.</u>

The motion to dismiss and the motion for partial summary judgment both turn on the issue of defendants' immunity from state and local taxation.  If defendants are indeed immune, then plaintiffs' claims and motion for partial summary judgment fail as a matter of law.  The court has jurisdiction to resolve the issue under 12 U.S.C. § 1452(f), which provides that "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States," and under 28 U.S.C. § 1367.

## II.  Motion to Dismiss

### A.

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires
that the court "'accept as true all of the factual allegations
contained in the complaint . . . .'" Erickson v. Pardus, 551
U.S. 89, 94 (2007) (quoting Twombly, 550 U.S. at 555-56); see
also South Carolina Dep't of Health & Envtl. Control v. Commerce
& Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting
Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court
must also "draw[] all reasonable . . . inferences from th[e]
facts in the plaintiff's favor . . . ." Edwards v. City of
Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B.

Under West Virginia law, any person who desires to
record a deed or other document transferring real estate is
subject to a real estate transfer tax.  W. Va. Code § 11-22-1, et
seq.  The tax has three components: (1) a State tax assessed at
a statutory rate of $1.10 for every $500 dollars, or fraction
thereof, in value stated on the transferring document; (2) a
county tax assessed at a rate of not less than $0.55 and not
more than $1.10 for every $500 dollars, or fraction thereof, in
value stated on the transferring document; and (3) a flat tax of
$20 per transfer.  Id. § 11-22-2.  In the ordinary course of
business, the tax is assessed by the clerk of the county in

7

which the transferring document is filed, and paid by the grantor listed on the transferring document. Id. If the grantor fails to pay the tax but the grantee nevertheless accepts title to the property, the grantee then becomes liable for the tax. Id.

Pursuant to federal statute, all three defendants are exempt from certain forms of state and local taxation. For example, under 12 U.S.C. § 1723a(c)(2), Fannie Mae, "including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, [is] exempt from all taxation now or hereafter imposed by any State, . . . county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent as other real property is taxed." Congress has granted Freddie Mac and the FHFA nearly identical immunities from state and local taxation.[4] See 12 U.S.C. §§ 1452(e) (Freddie Mac), 4617(j)(2) (FHFA).

---

[4] Freddie Mac, "including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by . . . any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." 12 U.S.C. § 1452(e).

"The [FHFA], including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local

8

In short, these laws (hereinafter referred to as the "Statutory Exemptions") consist of two parts: an immunity provision that makes the defendants "exempt from all taxation"; and an exception, or "carve-out," from that immunity which subjects "any real property of [the defendants] . . . [to] taxation to the same extent" as other real property is taxed. See 12 U.S.C. §§ 1723a(c)(2) (Fannie Mae), 1452(e) (Freddie Mac), 4617(j)(2) (FHFA).

Despite the existence of the Statutory Exemptions, plaintiffs contend that the defendants must pay the real estate transfer tax because: (1) the transfer tax does not fall within the definition of "all taxation" as that term is used in the immunity provision of the Statutory Exemptions; (2) the levy is a tax on real property that falls within the carve-out from the Statutory Exemptions; or (3) the Statutory Exemptions would be unconstitutional as-applied if they are interpreted to bar the imposition of the West Virginia tax.  These arguments were recently discussed and either explicitly or implicitly rejected by our court of appeals in Montgomery County II.  See generally 740 F.3d 914 (4th Cir. 2014) (holding that defendants are exempt

_____

taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . ."  12 U.S.C. § 4617(j)(2).

from Maryland and South Carolina transfer taxes).  Nevertheless, the court considers each in turn.[5]

1.

Plaintiffs contend that the term "all taxation" as it is used in the Statutory Exemptions does not include excise taxes such as the real estate transfer tax at issue here.  A straightforward reading of the statute forecloses this argument.

As always, statutory interpretation "necessarily begins with an analysis of the language of the statute."  In re Coleman, 426 F.3d 719, 724 (4th Cir. 2005) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)).  The first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Id. at 341.  "It is well established that,

---

[5]  The court will consider the statutory arguments first, in keeping with the "usual practice" of avoiding the resolution of constitutional questions "if there is some other ground upon which to dispose of the case."  Nw. Austin Mun. Dist. No. One v. Holder, 557 U.S. 193, 197, 205 (2009) (internal quotation marks and citations omitted).

when the statutory language is plain, [courts] must enforce it according to its terms." <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118 (2009).

The Statutory Exemptions state that defendants are exempt from "all taxation" levied by state and local governments, but the words "all" and "taxation" are not defined. <u>See</u> 12 U.S.C. §§ 1723a(c)(2) (Fannie Mae), 1452(e) (Freddie Mac), 4617(j)(2) (FHFA). "In the absence of such a definition, [courts] construe" statutory terms according to their "ordinary or natural meaning." <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 476 (1994); <u>United States v. Mills</u>, 485 F.3d 219, 222 (4th Cir. 2007) ("It is a cornerstone of statutory interpretation that an undefined term is construed in accordance with its ordinary and natural meaning.")(internal quotation marks omitted). When the word "all" is used as an adjective preceding a defining word, it ordinarily means "[t]he entire or unabated amount or quantity of; the whole extent, substance, or compass of; the whole." Oxford English Dictionary 324, vol. I (2d ed. 1989). "Taxation" means "the action of taxing or the fact of being taxed." Oxford English Dictionary 679, vol. XVII (2d ed. 1989).

In light of these definitions, it seems beyond dispute that "the common-sense, non-technical interpretation of 'all taxation' has to include" real estate transfer taxes "which

impose a tax . . . when a deed or other instrument of conveyance is recorded during the transfer of real property." County of Oakland v. Fed. Hous. Fin. Agency, 716 F.3d 935, 940 (6th Cir. 2013) (interpreting defendants' immunity from Michigan real estate transfer tax).  Courts around the country, have reached the same conclusion when analyzing similar language.  See, e.g., Delaware County v. Fed. Housing Fin. Agency, 747 F.3d 215, 222-23 (3d Cir. 2014) ("[W]e will join our sister circuits, interpret the phrase 'all taxation' to mean precisely what it says, and hold that the Enterprises are statutorily exempt from paying state and local real estate transfer taxes."); DeKalb County v. Fed. Housing Fin. Agency, 741 F.3d 795, 798-99 (7th Cir. 2013); Nicolai v. Fed. Hous. Fin. Agency, 928 F. Supp. 2d 1331, 1334-35 (M.D. Fla. 2013); Hertel v. Bank of Am. N.A., 897 F. Supp. 2d 579, 582 (W.D. Mich. 2012); Hager v. Fed. Nat'l Mortg. Ass'n, 882 F. Supp. 2d 107, 111–12 (D.D.C. 2012).[6]

          Plaintiffs advance two arguments in an attempt to muddy these seemingly clear waters.  Neither is persuasive.

---

[6] Only one federal court to consider whether the defendants are exempt from state and local excise taxes has reached a different conclusion; however, that ruling was vacated by the Sixth Circuit. Oakland County v. Fed. Hous. Fin. Agency, 871 F. Supp. 2d 662 (E.D. Mich. 2012), vacated, 716 F.3d 935 (2013).

a.

First, plaintiffs assert that <u>United States v. Wells Fargo Bank</u>, 485 U.S. 351 (1988), establishes that "all taxation" is a term of art that refers only to direct taxes, and not to excise taxes such as the real estate transfer tax at issue here. Plaintiffs misread <u>Wells Fargo</u>.  In that case, the Supreme Court held that a clause in the Housing Act of 1937 that exempted "Project Notes" (a form of municipal bond) from "all taxation" did not protect Project Notes from excise taxes.  <u>Id</u>. at 353-55. However, the Court's holding was tailored to the specific wording of the statute at issue in that case.  Specifically, the Court explained that "an exemption of <u>property</u> from all taxation" had historically been understood to mean that "the <u>property</u> was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property could be taxed."  <u>Id</u>. at 355 (emphases added).  In other words, <u>Wells Fargo</u> stands for the proposition that when the term "all taxation" is used in a statute exempting <u>property</u> from taxation, the term "has an understood meaning that does not include exemption from excise taxes" such as a real estate transfer tax. <u>Nicolai</u>, 928 F. Supp. 2d at 1335-36.  Several courts have reached the conclusion that <u>Wells Fargo</u> is limited to this understanding.  <u>See</u> <u>Delaware Cnty.</u>, 747 F.3d at 222-23; <u>DeKalb</u>

13

_Cnty._, 741 F.3d at 800-01; _Montgomery County v. Fed. Nat'l_
_Mortg. Ass'n_ ("_Montgomery Cnty. I_"), No. 13- 66, 2013 WL
1832370, at *6 (D. Md. Apr. 30, 2013) (collecting cases), _aff'd_,
_Montgomery Cnty. II_, 740 F.3d 914.[7]

For their part, defendants urge that when a statutory
exemption applies to an entity such as one of the defendants,
rather than to property, the meaning of "all taxation" includes
both direct taxes and excise taxes.  In support of their
argument, defendants cite _Federal Land Bank of St. Paul v._
_Bismarck Lumber Co._, 314 U.S. 96 (1941).  In that case, the
Supreme Court considered whether a provision of the Federal Farm
Loan Act exempted the Federal Land Bank of St. Paul from a state
sales tax.  The language at issue provided that "every Federal
land bank and every national farm loan association, including
the capital and reserve or surplus therein and the income
derived therein, shall be exempt from . . . State, municipal,
and local taxation . . . ."  _Id._ at 96 n.1 (citing 12 U.S.C. §§
931–933 (repealed 1971)).  The Court concluded, based on the
language of the statute, that the Bank was indeed exempt from
the tax because "[t]he unqualified term 'taxation' . . . clearly
encompasse[d]" a sales tax. _Id._ at 99.  In other words, _Bismarck_

---

[7] Although our court of appeals recently confirmed that Fannie
Mae and Freddie Mac are immune from State transfer taxes, it did
not specifically address the plaintiffs' "term of art" argument.
_See_ _Delaware Cnty._, 747 F.3d at 223 n.2.

stands for the proposition that "when Congress broadly exempts an <u>entity</u> from 'taxation' or 'all taxation' it means <u>all</u> taxation[,]" including excise taxes like the one at issue here. <u>Cnty. of Oakland v. Fed. Hous. Fin. Agency</u>, 716 F.3d 935, 941 (6th Cir. 2013) (interpreting Michigan transfer tax) (first emphasis added).

        In an effort to avoid the import of the Court's holding in <u>Bismarck</u>, plaintiffs contend that the decision was premised on the Federal Land Bank of St. Paul's status as a federal instrumentality, and not the language of the statutory exemption.  However, the statutory analysis in <u>Bismarck</u> "does not mention the federal instrumentality status of the Federal Land Banks[;] instead it relies specifically, and solely, on the statutory exemption written by Congress." <u>Fannie Mae v. Hamer</u>, No. 12-502301, 2013 WL 591979, at *6 (N.D. Ill. Feb. 13, 2013); <u>see also</u> <u>Montgomery Cnty. I</u>, 2013 WL 1832370 at *8 ("This argument misapprehends <u>Bismarck</u>.  The <u>Bismarck</u> Court very clearly divided its opinion into a statutory analysis, which examined [the statutory exemption], and a constitutional analysis[.]").

        Next, plaintiffs assert that this court should disregard <u>Bismarck</u> inasmuch as <u>Wells Fargo</u> postdates <u>Bismarck</u>, and therefore provides the more apposite authority.  But <u>Wells</u>

Fargo did not address Bismarck, let alone overturn it.  The two cases treat fundamentally distinct issues -- exemptions from taxation of property on the one hand, and the unqualified exemption of entities from taxation on the other hand.  See Nicolai, 928 F. Supp. 2d at 1337 ("Wells Fargo did not overturn the holding of Bismarck.  It simply addressed a different issue."); see also DeKalb Cnty., 741 F.3d at 800-01 (rejecting argument that Wells Fargo overruled Bismarck).

Bismarck, like this case, dealt with a state's attempt to subject a corporate entity to an excise tax despite the existence of a statute, remarkably similar to the statutes at issue here,[8] which exempted that entity from state and local taxation.  Accordingly, the Bismarck Court's holding controls this case.  Just as the unqualified statutory "exempt[ion] from . . . [state and local] taxation" in that case barred the state's efforts to impose an excise tax, 314 U.S. at 99, the

---

[8] Compare, e.g., 12 U.S.C. § 1723a(c)(2) (Fannie Mae "including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, [is] exempt from all taxation now or hereafter imposed by any state, . . . county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent as other real property is taxed."), with Bismarck, 314 U.S. at 96 n.1 ("[E]very Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therein, shall be exempt from . . . State, municipal, and local taxation, except upon real estate held, purchased or taken by said bank. . . .").

Statutory Exemptions at issue here bar the imposition of the real estate transfer tax. Cf. Delaware Cnty., 747 F.3d at 222-23; DeKalb Cnty., 741 F.3d at 800 ("Fannie's tax exemption, like that of the federal land banks in Bismarck, exempts an entity -- Fannie -- and not just its property . . . .  [T]he Fannie Mae statute exempts Fannie from real estate transfer taxes[.]"); Cnty. of Oakland, 716 F.3d at 940-43 (rejecting plaintiffs' reading of Wells Fargo and holding that Statutory Exemptions apply to property transfer taxes).

b.

In their next attempt to avoid the plain meaning of the Statutory Exemptions, plaintiffs point to a separate provision of the Housing and Economic Recovery Act ("HERA"), the law that created the FHFA.  See generally Pub. L. No. 110-289, 122 Stat. 2654 (2008) (providing, among other things, for the FHFA to exert regulatory control over Fannie Mae and Freddie Mac).  Specifically, plaintiffs note that § 4617(j)(4) of HERA exempts the FHFA from "penalties or fines, including those arising from the failure of any person to pay any . . . recording tax[.]"  The plaintiffs claim that such language would be unnecessary if the defendants were already individually exempt from paying recording taxes such as West Virginia's real

17

estate transfer tax. Invoking the canon against surplusage, which instructs courts "to give effect, if possible, to every clause and word of a statute," Duncan v. Walker, 533 U.S. 167, 174 (2001) (internal quotation marks omitted), plaintiffs assert that the Statutory Exemptions must be read narrowly to exclude the tax at issue here in order to avoid rendering § 4617(j)(4) superfluous.

"The canon against surplusage is not an absolute rule," Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1177 (2013), and "[r]edundancies across statutes are not unusual events in drafting," Ct. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). But more importantly, a straightforward reading of the plain text of § 4617(j)(4) demonstrates that it is not at all superfluous in the manner that plaintiffs suggest. Rather, the text of the statute states that the FHFA is not liable for "the failure of any person to pay" a recording tax. 12 U.S.C. § 4617(j)(4) (emphasis added). "The phrase 'any person' is broader than . . . 'the FHFA' or [Fannie Mae or Freddie Mac]. Therefore, it does not apply solely to the [defendants'] failure to pay taxes on time, but also includes non-exempt previous owners of property who may have failed 'to pay taxes on real estate now owned or managed by the FHFA as conservator of Fannie Mae and Freddie Mac.'" Nicolai, 928 F. Supp. 2d at 1334-35

18

(quoting Hertel v. Bank of Am. N.A., 897 F. Supp. 2d 579, 583
(W.D. Mich. 2012)).  Accordingly, interpreting the Statutory
Exemptions to bar the real estate transfer tax does not render §
4617(j)(4) superfluous.


                              ***


        In sum, having determined that the ordinary and
natural understanding of the term "all taxation" as it is used
in the Statutory Exemptions includes the tax at issue, and
finding no merit in the plaintiffs' arguments to the contrary,
the court concludes that the West Virginia real estate transfer
tax is barred by the immunity provision of the Statutory
Exemptions.

                              2.


        The plaintiffs' remaining arguments were expressly
foreclosed by the Fourth Circuit's decision in Montgomery County
II, and warrant only a short discussion.  Briefly summarized,
the plaintiffs contend that the real estate transfer tax falls
within the Statutory Exemptions' carve-out for taxes on "real
property"; alternatively, they argue that the Statutory
Exemptions would be unconstitutional as-applied if they were

                              19

interpreted to bar the application of the real estate transfer taxes.

a.

As our court of appeals has explained, exclusions like the carve-out, that allow "for the taxation of real property as 'other property is taxed,' undoubtedly refer to real property taxes imposed on the <u>ownership</u> of real property and not to transfer taxes imposed on the <u>transfer</u> of real property[.]" <u>Montgomery Cnty. II</u>, 740 F.3d at 920 (internal citations omitted) (emphases in the original).  As a result, "the real property exclusions from the general tax exemptions of 12 U.S.C. §§ 1723a(c)(2) and 1452(e) do not include transfer and recordation taxes."  <u>Id.</u> at 920-21; <u>Delaware Cnty.</u>, 747 F.3d at 223-24 ("The transfer taxes are an excise tax, not a direct tax on real estate, and therefore are not within the scope of the exemption."); <u>DeKalb Cnty.</u>, 741 F.3d at 801 ("A deed is not real estate any more than a car title is a car."); <u>Cnty. of Oakland</u>, 716 F.3d at 939 n.6 ("[T]he transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property."); <u>see also</u> <u>Pittman v. Home Owners' Loan Corp.</u>, 308 U.S. 21, 31 n.3 (1939) (holding that a tax on recording

20

mortgages did not fall within similar real property carve-out from statutory tax exemption).

The text of the real estate transfer tax at issue here clearly demonstrates that it is a tax upon "the use or transfer of property" and not a tax on "property itself." The statute provides that "[e]very person who delivers, accepts or presents for recording any document" transferring real estate is subject to the transfer tax. See W. Va. Code § 11-22-2. In other words, the tax falls on the person seeking to record a transfer, rather than on the property itself. Indeed, even the plaintiffs admit in their amended complaint that the West Virginia tax is a tax "on the privilege of transferring real estate." Am. Compl. ¶ 17. Accordingly, the real estate transfer tax does not fall within the real property carve-out.


b.


Plaintiffs' fallback assertion that the Statutory Exemptions are unconstitutional is similarly unavailing. Specifically, they contend that Congress did not have the authority under the Commerce Clause to enact the Statutory Exemptions, and that the Statutory Exemptions violate the Tenth Amendment. They also claim that even if the Statutory

Exemptions might be constitutional under certain circumstances, they are unconstitutional here because Fannie Mae and Freddie Mac are not federal instrumentalities.

As the Fourth Circuit explained in <u>Montgomery County II</u>, "Congress acted well within its Commerce Clause power in establishing Fannie Mae and Freddie Mac for the purpose" of promoting and regulating the nationwide secondary mortgage market, and the Statutory Exemptions were a permissible means of attaining that legitimate end. <u>Montgomery Cnty. II</u>, 740 F.3d at 923-25 (explaining that Congress could "rationally have believed that state taxation would substantially interfere with or obstruct the legitimate purposes of Fannie Mae and Freddie Mac"). As a result, the Statutory Exemptions stand on sound constitutional footing. <u>Id.</u>; <u>Delaware Cnty.</u>, 747 F.3d at 227; <u>DeKalb Cnty.</u>, 741 F.3d at 801-03.

Moreover, it cannot be said that the Statutory Exemptions impermissibly "commandeer" state employees in violation of the Tenth Amendment. It is true that Congress does not have authority under the Commerce Clause to "commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." <u>New York v. United States</u>, 505 U.S. 144, 161 (1992) (quoting <u>Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.</u>, 452 U.S. 264,

288 (1981)).  But Congress may preempt state laws that contravene national policy priorities by legislating "in full view of the public" so that "federal officials [] suffer the consequences if the decision turns out to be detrimental or unpopular."  Id. at 168.  That is precisely what Congress has done in this case.  The Statutory Exemptions do not covertly require state and local officials to enforce a federal regulatory regime; they preempt those officials from imposing a state and local tax.  Montgomery Cnty. II, 740 F.3d at 925 (holding that Statutory Exemptions do not commandeer local employees because "[t]he federal statutes in question . . . do not impose upon the states or local officers any affirmative obligation"); Delaware Cnty., 747 F.3d at 228 ("The Enterprise exemptions do not run afoul of Printz or New York for the simple reason that they do not issue directives requiring the States to address particular problems, nor command the States' officers . . . to administer or enforce a federal regulatory program" (internal quotation marks and citation omitted)).

     Finally, whether Fannie Mae and Freddie Mac are federal instrumentalities has no bearing on Congress's power to exempt them from taxation by statute.  Statutory tax immunity and the constitutional tax immunity afforded to federal instrumentalities are not coterminous.  Montgomery Cnty. II, 740

F.3d at 925 ("[C]onstitutional and statutory tax exemptions are distinct concepts."); see also United States v. City of Detroit, 355 U.S. 466, 475 (1958) ("Of course this is not to say that Congress, acting within the proper scope of its power, cannot confer immunity by statute where it does not exist constitutionally."); United States v. County of Fresno, 429 U.S. 452, 460 (1977) (noting that nondiscriminatory state tax "not directly laid on the Federal Government [is] valid . . . until Congress declares otherwise.").  Indeed, the Supreme Court has made it clear that Congress may broaden the scope of immunity from State taxation beyond its "narrow constitutional limits," even where private entities are involved, see United States v. New Mexico, 455 U.S. 720, 737 (1982), and the validity of such statutorily conferred immunity does not turn on the character of the entity to be exempted, or its status as an instrumentality, see Carson v. Roane-Anderson Co., 342 U.S. 232, 234 (1952) ("Certainly the policy behind the power of Congress to create tax immunities does not turn on the nature of the agency doing the work of the government."); see also First Agric. Nat'l Bank of Berkshire County v. State Tax Comm'n, 392 U.S. 339, 341 (1968) ("Because of pertinent congressional legislation in the banking field, we find it unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities.").  Thus,

"[b]ecause Congress may provide for immunity from state taxation irrespective of an entity's status as a federal instrumentality and because Congress has done so in the present case, it is unnecessary to address whether Fannie Mae and Freddie Mac indeed qualify as federal instrumentalities." Montgomery Cnty. II, 740 F.3d at 925.

C.

The defendants are statutorily immune from the West Virginia real estate transfer tax, and the Statutory Exemptions are constitutionally sound. These determinations are fatal to the plaintiffs' claims.

Under 28 U.S.C. § 2201, any court of the United States may declare the rights of any interested party seeking a declaration. Except in certain categories of cases not at issue here, this statute grants courts the authority to adjudicate constitutional questions that bear on the rights of interested parties. See, e.g., Gov. Suppliers Consolidating Servs., Inc. v. Bayh, 975 F.2d 1267 (7th Cir. 1992) (deciding Commerce Clause challenge to state regulation). Here, having determined that the Statutory Exemptions apply, and having further determined that those laws are constitutional, plaintiffs cannot plausibly

25

claim that they are entitled to a declaration that "Defendants violated West Virginia law by failing to pay real estate transfer taxes."  Am. Compl. at Prayer for Relief.

Likewise, under 28 U.S.C. § 2202, a court may impose "[f]urther necessary or proper relief based on a declaratory judgment . . . against any adverse party whose rights have been determined by such judgment."  But having determined that defendants are not liable for the West Virginia real estate transfer tax, plaintiffs cannot state a plausible claim for further relief including money damages in the amount of unpaid real estate transfer taxes.

Plaintiffs also claim that they are entitled to damages under a state-law claim of "equitable estoppel/detrimental reliance."  In order to prove equitable estoppel,

> there must be a false representation or a concealment of facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

Syl. Pt. 3, Cleaver v. Big Arm Bar & Grill, Inc., 502 S.E.2d 438 (W. Va. 1998).  Having determined that defendants are not liable for the real estate transfer tax, plaintiffs cannot show that defendants made any false representation regarding their tax

exempt status.  Accordingly, plaintiffs cannot establish the first element of their state-law claim, and therefore cannot state a plausible claim for damages on that ground.[9]


### III. Conclusion


Defendants' motion to dismiss is hereby GRANTED and this case is ordered dismissed with judgment in favor of defendants.

The Clerk is requested to transmit this memorandum opinion and order to all counsel of record and to any unrepresented parties.

DATED: June 9, 2014

John T. Copenhaver, Jr.
United States District Judge

---

[9] The determination that the defendants are immune from the real estate transfer tax disposes of the plaintiffs' motion for partial summary judgment on the issue of defendants' tax liability.  Inasmuch as defendants are immune from the West Virginia real estate transfer tax as a matter of law, plaintiffs' contrary claim that defendants are liable to pay the tax fails.